```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                     EASTERN DIVISION
```

Anthony L. Wilson,            :

     Plaintiff,           :    Case No. 2:14-cv-539

  v.                          :    JUDGE GEORGE C. SMITH
                                     Magistrate Judge Kemp
Deborah Timmerman-Cooper, et al.,

     Defendants.          :

## REPORT AND RECOMMENDATION
## AND ORDER

    Plaintiff Anthony L. Wilson, formerly a state prisoner at the London Correctional Institution, filed this civil rights action pursuant to 42 U.S.C. §1983.  His complaint, which names eleven defendants, alleges various deficiencies within the prison's legal and mailing systems, all of which, he contends, interfered with his First Amendment right of access to the courts.  He also includes a claim for being subjected to excessive heat due to the shutoff of the institution's electricity during a heat wave.

    On July 15, 2014, Defendants moved to dismiss, arguing that the complaint is frivolous.  Mr. Wilson applied for and was granted three extensions of time, through December 11, 2014, to respond to that motion.  The last order granting an extension of time stated that "[n]o further extensions will be granted without a showing of exceptional good cause."  (Doc. 15).

    Mr. Wilson filed nothing by the December 11, 2014 deadline. He did, however, file a fourth motion for an extension of time on December 23, 2014, asking for an additional 45 days to respond. Were that to have been granted, his response would have been due on January 26, 2015.  He did not file a response by that date. Further, his latest motion did not set forth any exceptional circumstances warranting a further extension, nor did it show

excusable neglect as required by Fed.R.Civ.P. 6.  Rule 6(b) reads: **"Extending Time.** (1) *In General*. When an act may or must be done within a specified time, the court may, for good cause, extend the time: ... (B) on motion made after the time has expired if the party failed to act because of excusable neglect." The Court therefore denies the motion for extension (Doc. 16) and proceeds to examine the merits of the motion to dismiss.  For the following reasons, it will be recommended that the motion (Doc. 8) be denied, but, for the reasons stated below, it will also be recommended that the complaint be dismissed for failure to state a claim upon which relief can be granted.

I.

Defendants' motion is brief and straightforward.  They note that Mr. Wilson made much the same set of allegations in an earlier case, Case No. 2:13-cv-139.  Regardless of whether his claims in that case have merit, Defendants argue that they should not be subjected to duplicative lawsuits, and that dismissal of this case is the proper remedy.

The primary case which Defendants cite in support of their motion is Cummings v. Mason, 2011 WL 2745937 (W.D. Mich. July 13, 2011).  There, the court approved the dismissal of a second lawsuit filed by a state prisoner because it was "substantially identical" to an earlier case, holding that "[a] complaint is duplicative and subject to dismissal if the claims, parties and available relief do not significantly differ from an earlier-filed action."  Id. at *1, *2.  To determine whether this case and the earlier-filed case meet this definition, it is necessary to review the complaint filed in Case No. 2:13-cv-139, which is now the subject of a pending Report and Recommendation recommending that the Court grant a motion for judgment on the pleadings.

In Case No. 2:13-cv-139, Wilson v. Gillespie, Mr. Wilson

-2-

targeted very specific actions taken by the defendants in that case involving various litigated matters in which Mr. Wilson was involved. Specifically, he complained about not receiving timely notice about a resentencing hearing in his criminal case which dealt with the issue of post-relief control, about a child custody case, and about denial of visits from his attorney. He named four of the same defendants named in this case - Defendants Timmerman-Cooper, Justus, Noble, and Blackwell - but there are seven defendants named here who are not defendants in Case No. 2:13-cv-139. In the current case, he identifies (by grievance) a number of issues which are not raised in Case No. 2:13-cv-139, including not being allowed to attend a hearing in Summit County, problems with having a financial form for use in connection with *in forma pauperis* applications completed by prison officials, not having legal mail sent out in a timely fashion, lack of access to the law library, lack of up-to-date materials in the library, the shutoff of prison air conditioning or ventilation for two days in July, 2013, problems with computer use in the prison law library, and the failure of prison officials to return a document related to a hearing in Greene County. Many of these events happened well after Mr. Wilson filed his complaint in Case No. 2:13-cv-139. Even a cursory review of the two complaints shows that the cases do not involve substantially the same claims and the same parties, and they do not meet the test for dismissal set out in Defendants' legal authorities. Consequently, the motion, as filed, provides no basis for dismissal.

II.

Mr. Wilson has, however, been granted leave to proceed in this case *in forma pauperis*. The statute governing such proceedings states, in part, that "the court shall dismiss the case *at any time* if the court determines that ... the action ... is frivolous or malicious; [or] fails to state a claim on which

relief may be granted." 28 U.S.C. §1915(e)(2)(emphasis supplied). In order to survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level ...." Bell Atlantic v. Twombley, 550 U.S. 544, 555 (2007). Having examined Mr. Wilson's complaint more closely, and for essentially the same reasons supporting the recommendation that Case No. 2:13-cv-139 be dismissed, the Court recommends dismissal of this case as well.

As the Court stated in its Report and Recommendation in that case (Doc. 61, filed on January 22, 2015, at 2-3),

> the First Amendment has not been interpreted so broadly that it prevents prison officials from restricting an inmate's access to any and all court proceedings. Rather, only certain types of proceedings are within the scope of the First Amendment's protection of access to the courts. As the Supreme Court said in Lewis v. Casey, 518 U.S. 343, 356 (1996), the First Amendment, as interpreted in the landmark case of Bounds v. Smith, 430 U.S. 817 (1977),
>
>> does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

Here, none of the access to courts claims advanced by Mr. Wilson, in any of the grievances he filed, implicate either his underlying criminal conviction or litigation concerning his conditions of confinement. He does raise an issue about the completion of a financial statement for federal court purposes,

-4-

but he does not allege that he was prevented from filing any specific federal court case dealing his underlying conviction or with the conditions of his confinement due to delays in processing the form.  His general complaints about lack of access to the law library, or the types of resources or materials found there, are not actionable absent some claim that he suffered an adverse consequence in a piece of protected litigation due to these problems.  "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Lewis v. Casey, 518 U.S. 343, 351 (1996).  Similarly, Mr. Wilson's complaint about the prison's mail handling procedures do not state a claim for relief unless accompanied by allegations that he suffered "an actual, concrete injury, in the form of prejudice ... in the pursuit of some legal claim." Cortino v. Karnes, 2012 WL 2921785, *8 (M.D. Pa. Jan. 25, 2012), adopted and affirmed 2012 WL 2921511 (M.D. Pa. July 17, 2012).  Consequently, the complaint filed in this case does not set forth plausible facts upon which a First Amendment access to the courts claim can rest, and those claims are subject to dismissal under §1915(e)(2).

    That leaves only the claim that Mr. Wilson was subjected to extremely high temperatures on two days when, apparently for reasons related to not wishing to bring down the power grid, prison officials ordered a shutdown of some air conditioning or ventilating equipment.  The complaint asserts that some of the defendants placed Mr. Wilson in an "unsafe environment...by assisting in disconnecting the electricity within the institution during extreme heatwave days subjecting Plaintiff to unfit condition of his confinement while refusing to provide adequate cool down station during heatwave days." See, e.g., Doc. 3, ¶23.  The grievance which Mr. Wilson filed about this subject clarifies

that his complaint relates to a shutoff of electricity on July 15 and 16, 2013, which caused dorm temperatures to reach 120 degrees. In particular, on the 16th, Mr. Wilson said he was working in the law library when the power shut off, and by the time he got back to his dorm it was too late for him to shower to cool off. He was apparently allowed to go outside but was not permitted to sit in the shade. He also asserted that he could not "function at a normal pace due to the extreme heat conditions that placed me in a state of abnormality." Doc. 3, PAGEID # 141. The response indicates that ODRC's electrical supplier had called an "event" which required users to reduce their electrical consumption in order to prevent a "brownout."

To plead a claim for the violation of the right to be free from cruel and unusual punishment based on prison conditions, a complaint must allege "extreme deprivations." Hudson v. McMillian, 503 U.S. 1, 9 (1992). A claim that poor cooling or ventilation caused an inmate to be woozy and lightheaded is not a viable Eighth Amendment claim, even where the allegedly excessive heat lasted for ten days. Jackson v. Young, 2013 WL 6038158, *2 (C.D. Ill. Nov. 14, 2013). Rather, in order to state a claim for extremes of temperature in a prison environment, a plaintiff must allege that "the extreme heat subjected him to a substantial risk of serious harm." Vasquez v. Frank, 2007 WL 3254702, *6 (W.D. Wisc. Nov. 2, 2007), aff'd 290 Fed. Appx. 927 (7th Cir. 2008). Further, one of the factors the Court considers is the duration of the conditions about which the plaintiff complains. Dixon v. Godinez, 114 F.3d 640, 644 (7th Cir. 1997). Exposure of inmates to extreme temperatures for long periods of time (measured in weeks or months) may violate the Eighth Amendment, see Walker v. Schult, 717 F.3d 119 (2nd Cir. 2013), but that is not what Mr. Wilson has alleged here.

The complaint in this case, fairly read, states that the

dorm temperatures rose to very uncomfortable levels for portions of two days in the summer of 2013.  As to Mr. Wilson himself, he was affected by the heat by feeling "abnormal" and having to pace himself in his activities.  Under the case law cited above, those facts are simply insufficient to support an Eighth Amendment claim.  Put differently, where the "plaintiff has not alleged facts which suggest a serious risk of danger to his health, as opposed to mere discomfort," he has not pleaded facts from which a judge or jury could find that he has been denied the "minimal civilized measure of life's necessities." Strope v. Cummings, 2008 WL 508698, *3 (D. Kan. Feb. 22, 2008), citing, inter alia, Farmer V. Brennan, 511 U.S. 825, 834 (1994).  Consequently, Mr. Wilson's Eighth Amendment claim is also subject to dismissal under §1915(e)(2).

### III.

For the reasons set forth above, Plaintiff's motion for an extension of time (Doc. 16) is denied.  It is also recommended that Defendants' motion to dismiss (Doc. 8) be denied and that this case be dismissed under 28 U.S.C. §1915(e)(2) for failure to state a claim upon which relief can be granted.

### IV.

#### A.  Objections to the Order

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 14-01, pt. IV(C)(3)(a).  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be

clearly erroneous or contrary to law.

This order is in full force and effect even if a motion for reconsideration has been filed unless it is stayed by either the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.3.

       B.   <u>Objections to the Report and Recommendation</u>

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir.1981).

                                           <u>/s/ Terence P. Kemp</u>
                                           United States Magistrate Judge